UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSE MARTIN VIRAMONTES-GOMEZ,

                    Petitioner,

          v.

KIRSTEN NIELSEN, et al.,

                    Respondents.

Case No. C18-935-JLR-JPD

REPORT AND RECOMMENDATION

## I.    INTRODUCTION

Petitioner, who is currently detained at the Northwest Detention Center in Tacoma, Washington, brings this 28 U.S.C. § 2241 immigration habeas action *pro se* to obtain release from detention or a bond hearing.  Dkt. 3.  He filed another action seeking the same relief, *Viramontes-Gomez v. ICE Field Office Director*, No. C18-941-RAJ-BAT (W.D. Wash.) ("*Viramontes-Gomez II*"), and the two have been consolidated.  Dkt. 16.  The Government has moved to dismiss, arguing that petitioner's detention is statutorily authorized and he has already received three bond hearings.[1]  Petitioner did not file a response.  Having considered the parties' submissions, the balance of the records in both cases, and the governing law, the Court

---

[1] At the Government's request, the Court will address the motion to dismiss filed at Docket No. 8 in *Viramontes-Gomez II*, which was fully briefed at the time the parties sought consolidation of the two matters.

REPORT AND RECOMMENDATION - 1

1  recommends that the Government's motion to dismiss be GRANTED, petitioner's habeas

2  petition be DENIED, and this action be DISMISSED with prejudice.

3             II.        BACKGROUND

4         Petitioner is a native and citizen of Mexico who unlawfully entered the United States in

5  May 1992 when he was a young child.  *Viramontes-Gomez II*, Dkts. 9-1 at 3, 9-2 at 2-3.  He first

6  came to the attention of U.S. Immigration and Customs Enforcement ("ICE") on or about

7  October 28, 2016, while he was incarcerated at the Northern Oregon Regional Correctional

8  Facility on multiple charges, including three felony counts of Assault Fourth Degree Domestic

9  Violence for physically injuring his now ex-wife in the presence of his three young children, and

10 two counts of Contempt of Court for violating a restraining order that prohibited him from

11 contacting his now ex-wife.  *Viramontes-Gomez II*, Dkts. 9-6, 9-8, 9-12 at 3.  An immigration

12 official interviewed petitioner and determined that he is a Mexican citizen without the proper

13 documents to be in the United States.  *Id.*  On December 8, 2016, the Circuit Court of the State of

14 Oregon entered judgments against petitioner based on guilty pleas in his outstanding criminal

15 cases.  *Viramontes-Gomez II*, Dkts. 9-7, 9-10, 9-11.  In total, he was sentenced to 45 days in

16 prison and 36 months probation.  *Viramontes-Gomez II*, Dkt. 9-12.

17        On December 20, 2016, ICE took petitioner into custody and served him with a Notice to

18 Appear, charging him with removability for being present without inspection.  *Viramontes-*

19 *Gomez II*, Dkts. 9-14, 9-15; 8 U.S.C. § 1182(a)(6)(A)(i) ("[A noncitizen] present in the United

20 States without being admitted or paroled, or who arrives in the United States at any time or place

21 other than as designated by the Attorney General, is inadmissible.").

22        On January 6, 2017, petitioner requested a bond hearing.  *Viramontes-Gomez II*, Dkt. 9-

23 16.  On February 1, 2017, an immigration judge ("IJ") held a bond hearing and denied

REPORT AND RECOMMENDATION - 2

1   petitioner's request for release, finding that he presents a danger to the community and a flight

2   risk. *Viramontes-Gomez II*, Dkt. 9-17. Petitioner did not appeal this decision.

3          On May 18, 2017, the State of Oregon charged petitioner with four counts of Contempt

4   of Court for violating the no-contact order with his now ex-wife by calling her from immigration

5   detention. *Viramontes-Gomez II*, Dkt. 9-18. He later entered a guilty plea to three counts of

6   Contempt of Court. *Viramontes-Gomez II*, Dkt. 9-19.

7          On June 27, 2017, petitioner received a second bond hearing. *Viramontes-Gomez II*,

8   Dkts. 9-20, 9-21. The IJ put the burden of proof on the government to prove by clear and

9   convincing evidence that petitioner presents a danger to the community and/or a flight risk.

10  *Viramontes-Gomez II*, Dkt. 9-22 (Audio Recording of June 27, 2017 *Rodriguez* Bond Hearing).

11  The IJ denied bond, finding that the government met its burden, primarily relying on petitioner's

12  recent criminal history. *Viramontes-Gomez II*, Dkts. 9-21, 9-22. Petitioner waived his right to

13  appeal. *Id.*

14         On September 18, 2017, petitioner appeared before an IJ for removal proceedings.

15  *Viramontes-Gomez II*, Dkts. 9-2, 9-23. The IJ ordered petitioner removed to Mexico and denied

16  his applications for relief from removal. *Id.* Petitioner appealed to the Board of Immigration

17  Appeals ("BIA"). *Viramontes-Gomez II*, Dkt. 9-24.

18         On January 4, 2018, petitioner received a third bond hearing before an IJ. *Viramontes-*

19  *Gomez II*, Dkt. 9-25. Again, the IJ put the burden of proof on the government to establish by

20  clear and convincing evidence that petitioner presents a danger to the community and/or a flight

21  risk. *Viramontes-Gomez II*, Dkt. 26 (Audio Recording of January 4, 2018 *Rodriguez* Bond

22  Hearing). After hearing all of the evidence, the IJ denied petitioner's request for release, finding

23  that he presents a danger to the community because of his criminal history and is a flight risk

REPORT AND RECOMMENDATION - 3

1    because he does not have close ties to the person with whom he was planning to live.

2    *Viramontes-Gomez II*, Dkt. 9-25.  Petitioner waived his right to appeal.  *Id.*

3      On February 22, 2018, the BIA dismissed petitioner's appeal of the IJ's removal order.

4    *Viramontes-Gomez II*, Dkt. 9-27.  On March 6, 2018, petitioner filed a petition for review with

5    the Ninth Circuit, challenging the BIA's decision.  *Viramontes-Gomez v. Sessions*, Case No. 18-

6    70265, Dkt. 1 (9th Cir. Mar. 6, 2018) ("*Viramontes-Gomez III*").  On August 10, 2018, the Ninth

7    Circuit granted the government's unopposed motion to remand the matter to the BIA and stayed

8    petitioner's removal pending a decision by the BIA.  *Viramontes-Gomez III*, Dkt. 10.

9      On June 28, 2018, an IJ denied petitioner's request for a fourth bond hearing, finding,

10   among other things, that petitioner had "not established material changed circumstances

11   regarding his dangerousness or flight risk since his last bond hearing on 1/4/18."  *Viramontes-*

12   *Gomez II*, Dkt. 9-29.  There is no record that petitioner appealed this decision.

13     Petitioner's habeas petition in the instant action was filed on July 13, 2018.  Dkt. 3.  In it,

14   he claims that he has been detained for over 530 days and has not had a bond hearing.  *Id.* at 1.

15   He asserts that his prolonged detention without a bond hearing violates the Fifth Amendment's

16   Due Process Clause.  *Id.* at 2.  He seeks his release or, in the alternative, a bond hearing where

17   the burden is on the government to prove by clear and convincing evidence that he presents a

18   flight risk or danger to the community.  *Id.*

19     On July 20, 2018, the Court served the petition and ordered respondents to file a return

20   memorandum.  Dkt. 4.  The same day, the Court directed the Office of the Federal Public

21   Defender ("FPD") to contact petitioner regarding representation.  Dkt. 5.  The Court explained

22   that petitioner's habeas petition was one of the first in this District that raised the issue of

23   whether the prolonged detention without a bond hearing of a noncitizen who is in removal

proceedings violates the Due Process Clause. *Id.* On August 14, 2018, the FPD filed a status report. Dkt. 8. After speaking with petitioner, the FPD determined that petitioner did not understand the gravamen of his *pro se* pleading and already had bond hearings. *Id.* Thus, the FPD and petitioner agreed that it did not make sense for the Court to appoint counsel in his case. *Id.*

On August 20, 2018, the Government filed its return memorandum and motion to dismiss. Dkt. 9. On September 7, 2018, petitioner moved to consolidate this action with *Viramontes-Gomez II*, asking that *Viramontes-Gomez II* be the lead case. Dkt. 14. On September 12, 2018, the Government joined petitioner's request and asked the Court to rule on the already-ripe motion to dismiss that it had filed in *Viramontes-Gomez II* and to deny as moot the motion to dismiss pending in the instant action. Dkt. 15. On September 20, 2018, the Court granted the motion to consolidate but consolidated the two cases under the instant cause number, as it is the practice in this district for the earlier-filed case to be the lead. Dkt. 16. Neither party objected. *See id.* (granting parties 14 days to object to consolidation order).

III.    <u>DISCUSSION</u>

Title 8 U.S.C. § 1226 provides the framework for the arrest, detention, and release of non-citizens, such as petitioner, who are in removal proceedings. 8 U.S.C. § 1226; *see also Demore v. Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."). Section 1226(a) grants the Department of Homeland Security ("DHS") the discretionary authority to determine whether a noncitizen should be detained, released on bond, or released on conditional parole pending the completion

of removal proceedings, unless the noncitizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory.[2]  8 U.S.C. § 1226.

When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond.  *See* 8 C.F.R. § 236.1(c)(8).  After the initial custody determination, the detainee may request a bond redetermination by an IJ.  8 C.F.R. § 236(d)(1).  At the bond redetermination hearing, the burden is on the detainee to show to the satisfaction of the IJ that he warrants release on bond.  *See In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006).  In making a bond decision under § 1226(a), an IJ must consider whether the detainee "is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk."  *Id.* (citing *In re Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)).  An IJ also may consider any number of discretionary factors, including:  (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States.  *Id.*

---

[2] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the Board of Immigration Appeals.  *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

1    If the IJ denies bond, the detainee may appeal to the BIA. 8 C.F.R. § 236.1(d)(3). If the

2  BIA affirms the IJ's decision, the detainee may seek habeas relief from the district court.

3  *Leonardo v. Crawford*, 646 F.3d 1157, 1159-61 (9th Cir. 2011); *Sun v. Ashcroft*, 370 F.3d 932,

4  941 (9th Cir. 2004). Federal district courts have jurisdiction to review bond hearing

5  determinations for constitutional claims and legal error, *Singh v. Holder*, 638 F.3d 1196, 1202

6  (9th Cir. 2011), but they cannot second guess an IJ's discretionary judgment regarding the

7  application of § 1226(a), 8 U.S.C. § 1226(e).

8    Once an IJ has made an initial bond redetermination, a detainee's request for a

9  subsequent bond redetermination must be made in writing and must show that the detainee's

10  circumstances have changed materially since the prior bond redetermination. 8 C.F.R. §

11  1003.19(e).

12    In this case, there is no dispute that petitioner is detained under § 1226(a). Because his

13  detention is statutorily authorized, he is not entitled to release. *See Demore*, 538 U.S. at 530. In

14  addition, petitioner makes no argument that the IJs committed constitutional or legal error in

15  denying bond.[3] The Court has conducted an independent review of the IJs' bond decisions and

16  finds no error; the IJs considered all of the evidence and applied the appropriate legal standards.

17  Petitioner's detention complies with the statutory and regulatory requirements.

18    Petitioner nevertheless seeks an additional bond hearing. Dkt. 3 at 2. Until recently,

19  Ninth Circuit jurisprudence required noncitizens detained under § 1226(a) to be provided

20  automatic bond hearings every six months at which the government was required to justify

21  continued detention by clear and convincing evidence. *Rodriguez v. Robbins*, 804 F.3d 1060,

22  1084-85, 1087 (9th Cir. 2015) ("*Rodriguez III*"), *rev'd sub nom Jennings v. Rodriguez*, 138 S.

23

---

[3] Indeed, in his habeas petition, he claims that he never received a bond hearing.

REPORT AND RECOMMENDATION - 7

Ct. 830 (2018). In *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), the Supreme Court reversed, explaining that the Ninth Circuit had misapplied the canon of constitutional avoidance and that "[n]othing in § 1226(a)'s text . . . even remotely supports the imposition of" periodic bond hearings where the government bears the burden. *Id.* at 847. The Supreme Court did not decide whether the Constitution requires such periodic hearings, and remanded to the Ninth Circuit for consideration of that question.[4]

On the facts of this case, the Court concludes that due process does not require an additional bond hearing at this time. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). To determine the requirements of due process, courts consider (1) the private interest affected, (2) the government's interest, and (3) the value added by alternative procedural safeguards to what has already been provided in the particular situation before the court. *Id.* at 334-35. Petitioner's freedom from detention is at stake, which is an important interest that "lies at the heart of the liberty that [the Due Process] Clause protects." *Rodriguez III*, 804 F.3d at 1066. Petitioner has been detained since December 2016, and it has been over nine months since his most recent bond hearing. The government also has legitimate interests that are implicated by petitioner's continued detention: assuring he will appear if ultimately ordered removed and protecting the public from him given his criminal history. *Soto v. Sessions*, No. 18-2891, 2018 WL 3619727, at *4 (N.D. Cal. July 30, 2018) (citing 8 C.F.R. § 236.1(c)(8) (allowing release from detention if noncitizen "is likely to appear for any further proceeding" and "would not pose a danger to property or persons"); *Zadvydas v. Davis*, 533 U.S. 678, 690-91 (2001)). As to the third factor, petitioner already has received three individualized bond hearings before a neutral

---

[4] The Ninth Circuit has not yet issued its opinion.

REPORT AND RECOMMENDATION - 8

judge, and he has made no showing of circumstances that would justify a different custody

determination at this time.  Weighing the three *Mathews* factors, the Court concludes that

petitioner has received all of the due process protections to which he is entitled at this time.

IV.    <u>CONCLUSION</u>

The Court recommends that the Government's motion to dismiss, *Viramontes-Gomez II*,

Dkt. 8, be GRANTED, petitioner's habeas petition be DENIED, and this action be DISMISSED

with prejudice.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and

served upon all parties to this suit by no later than **November 8, 2018**.  Failure to file objections

within the specified time may affect your right to appeal.  Objections should be noted for

consideration on the District Judge's motion calendar for the third Friday after they are filed.

Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no

timely objections are filed, the matter will be ready for consideration by the District Judge on

**November 9, 2018.**

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal

seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

assigned District Judge acts on this Report and Recommendation.

Dated this 18th day of October, 2018.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9